STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 06-249


MICHAEL VEAZIE

VERSUS

MONICA FONTENOT


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 98-C-4017-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.


**AFFIRMED IN PART AND REVERSED IN PART.**


**Anne Elizabeth Watson**
**Attorney At Law**
**232 N. Liberty St.**
**Opelousas, LA 70570**
**(337) 942-9790**
**Counsel for Defendant/Appellee:**
**Monica Fontenot**

**Vanessa Harris-Kennerson**
**Harris and Harris**
**1015 North Main Street**
**Opelousas, LA 70570**
**(337) 942-6788**
**Counsel for Plaintiff/Appellant:**
**Michael Veazie**

**EZELL, JUDGE.**

In this custody case, Michael Veazie appeals the decision of the trial court granting a change in domiciliary status of his child, Trever, in favor of the child's mother, Monica Fontenot. For the following reasons, we reverse the decision of the trial court in part and affirm in part.

Trever Veazie was born on June 5, 1995. His parents, Mr. Veazie and Ms. Fontenot, were never married. Trever initially lived with his mother. At the age of sixteen months, Trever was sent to live with his father when his mother became overwhelmed with the responsibilities of raising the child. Trever has lived with his father ever since, except for a brief period in which he was removed from Mr. Veazie's home by Ms. Fontenot without his consent. That action by Ms. Fontenot led to the issuance of a considered decree in January of 1999, awarding the parties joint custody with Mr. Veazie designated as domiciliary parent. Ms. Fontenot was awarded visitation with the child.

In December of 2004, Ms. Fontenot filed a rule to change custody, seeking to become the domiciliary parent of Trever. Ms. Fontenot currently lives in Arlington, Texas. After a hearing on the matter, the trial court found that the benefits to the child from living with the mother substantially outweighed any harm that could be suffered as a result of a change of environment. The trial court designated Ms. Fontenot as domiciliary parent, ordered parenting classes for her, and ordered counseling for Trever. From this decision, Mr. Veazie appeals.

Mr. Veazie asserts as his lone assignment of error that the trial court erred in changing the domiciliary custody of Trever when the requirements of the *Bergeron* standard had not been met. We agree.

1

Under Louisiana Civil Code Article 131, decisions regarding custody of the children are made with the best interest of the child being paramount. This court has clearly stated the standard of review for an appellate court in child custody matters. "The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied,* 96-1650 (La. 10/25/96), 681 So.2d 365.

In *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), the Louisiana Supreme Court articulated the standard to be used when a modification of a considered custody decree is sought. The court stated that:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by *clear and convincing evidence* that the harm likely to be caused by a change of environment is *substantially outweighed* by its advantages to the child.

*Id.* at 1200 (emphasis added). It is undisputed that the original custody decree rendered in this matter was a considered decree; therefore, the *Bergeron* standard is applicable.

We find that the trial court did not follow the *Bergeron* standard. Simply put, Ms. Fontenot did not prove that the harm likely to be caused by a change of environment is substantially outweighed by its advantages by clear and convincing evidence.

The trial court placed much weight on Trever's stated desire to live with his mother. Trever's preference is clear. He has been consistent in his choice, even telling the counselor assigned by the trial court to evaluate him that he would be "mad

2

and sad" if he could not live with Ms. Fontenot. However, a child's preference is but one factor to consider, the trial court even noting itself in its reasons for judgment that a child could and should not determine where he lives. Most ten year olds would not prefer a rigid, disciplined environment where school came before entertainment and sports to the world Trever knows at his mother's, which is only during the summers, and is filled with fun and little to no responsibilities. Furthermore, a ten year old can not see that if he was at his mother's house during the school year, that things would, or at least should, be different than in the summer. Trever's preference alone simply does not give rise to the clear and convincing evidence needed to overturn a considered decree.

The trial court also noted tensions between Trever and his stepmother in changing the domiciliary status. Notably, Trever stated that he feels he is treated differently than his four-year-old stepbrother by his stepmother. Nevertheless, Mr. Veazie stated that any discrepancies between the way Trever is treated and the way Trever's stepmother treats her own child can be explained by the fact that a ten year old is simply not treated the same way a four year old is. We find this to be credible. A ten year old is unlikely to understand this, however. Furthermore, in his second session with the trial court, Trever retracted claims he made about being left behind while his father, stepmother, and half brother did things.

The trial court specifically noted that it felt that Mr. Veazie was a good father to Trever, who cared about his son's education and participated in his life. We agree. It is clear that Mr. Veazie has been a good and caring father to Trever, making great sacrifices for the child when Ms. Fontenot was unable or unwilling to. His love for Trever is obvious. Trever has lived at his father's home basically all of his life. He has been raised with the help of his paternal grandparents who live directly next door,

3

and who have actively been a part of Trever's daily life. To take Trever out of this stable, caring environment would not be in his best interest.

Furthermore, there exist serious concerns about the child's education in Texas. Mr. Veazie and Trever's grandmother have set up a structure for his education that would not be there in Texas with Ms. Fontenot. Before being placed on ADHD medication, Trever failed second grade with his father and grandmother, both teachers, tutoring him every day. Their constant work has made him go from failing to being on the honor roll for the past two years. Without the framework they have set up for his educational needs, the child might quickly find his grades slipping.

It is clear that Ms. Fontenot loves Trever greatly. However, after an examination of the record as a whole, it is clear that Ms. Fontenot did not meet the heavy burden required of her to alter a considered custody decree. She did not prove by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages. Therefore, the trial court clearly abused its discretion in altering the domiciliary status of the child.

The trial court did voice concern about Trever's mental health. While he testified to the trial court that he no longer had self-destructive thoughts, and was glad that he never acted on them, Trever has indicated a desire to hurt himself in the past if he could not live with his mother. Because of this, the trial court ordered counseling for Trever. These concerns are valid. Like the trial court, this court feels that counseling is in the best interest of the child. However, he could receive counseling for any such issues while living with his father as easily as he could while living with his mother. We hereby affirm the portion of the judgment ordering that counseling be given to Trever.

The decision of the trial court granting Monica Fontenot domiciliary parent status over Trever is hereby reversed. The decision ordering counseling for Trever is affirmed. Costs of this appeal are assessed against Monica Fontenot.

**AFFIRMED IN PART AND REVERSED IN PART.**